Next case, Ameren IP v. Investor Commission 5100557 Counsel please May I please have the court to volunteer to represent Ameren IP on this appeal? I believe this court has the opportunity to What's your name, Counsel? Oh, I'm sorry, William Leff. My fault. I represent Ameren IP. I believe this court has the opportunity to correct a wrong in this case. To do two things. To reiterate a long-standing line of case law that the natural progression of an underlying problem is not compensable. Also, that the manifest weight of the evidence is an applicable standard to correct a flawed analysis or lack of analysis below. In fact, I submit to you that this case is the postal child for the manifest weight of the evidence standard to be applied. What was that first principle you offered for the natural progression? What was that statement? The natural progression of underlying degenerative processes that lead to disability are typically not deemed compensable unless there's an accident somehow aggravating that condition. Well, that's it. Isn't the argument from the other side going to obviously be that the injury at work aggravated a pre-existing condition? That's the argument, but I submit to you there's no evidence from either the testimony at trial or the doctors. In fact, I know... But if the evidence were to establish that, you would agree it doesn't have to be the sole or even the primary cause. A causative factor in aggravating a pre-existing condition would be compensable, correct? I agree with that. Assuming the evidence supports that, you're right. I agree with that. In fact, I'm not up here trying to change that standard. You asked a question on one of the earlier cases. One of the attorneys said, is there conflicting medical evidence in this case? And if so, why do we second-guess the condition for deciding one opinion versus the other? That is usually a standard question. I submit to you in this case there is no conflicting medical evidence. The evidence from Dr. Merkin is clear that there was no causal connection. He initially said it could be connected, but the guy misled him. Dr. Merkin asked the guy, was there any pre-existing condition? He said no. So Dr. Merkin issued a preliminary opinion and said, well, it could be connected. We gave him all the records and the chronology that I'm going to outline here in a moment. Dr. Merkin said, well, he misled me, obviously. No, there's no way because he was a candidate for surgery before this kind of injury ever occurred. What about Dr. Rue? Dr. Rue. He had an opposite opinion, didn't he? No, he didn't. He initially had an opposite opinion. On direct examination, he said, if you assume this history is correct, then I think a drug blow to the head could aggravate that pre-existing condition. Right. On cross-examination, though, he said, I confronted him with all the records, which he did not have at the time he made his initial opinion. He did not have any of those records. And I asked him, if you assume the history is different than what he told you, could your opinion be different? He said yes. I said, were you aware of all these facts, the chronology that I'm going to go through here in a second? He said, no, I was not aware of that. And then on cross-examination, at the end of the deposition, in response to my question, and would that indicate to you that, in fact, this man's problems as of 1307 were progressive from the degenerative condition as opposed to being traumatically induced? He said yes. That opinion was not changed on redirect examination. Which, Dr. Rude's final opinion, when he was provided all the records, that way to say, in fact, in the deposition, he said, he had a little frustrated because he didn't have all the records. He said, wait, I'm just here to treat this man. When he had all the records and I confronted him with his history, he said, you're right. It's not traumatically induced. So there is no medical opinion in this case. There's no conflicting medical opinion in this case. There are two medical opinions, both of which are that the situation is not work-related. And yet the arbitrator and the commission found them in favor of the claim, knowing the alleged infirmities. Well, this is a decision from arbitrator, or I should say ex-arbitrator, Jennifer T. And I think the lack of analysis in her decision is startling. And that's my argument at the outset. I do believe this Court has a duty to independent or to at least make sure that all the evidence has been considered and that a decision is based on reason and the facts. I submit to you her decision was not. Then we appeal the case. There's oral argument. We get a decision from two commissioners, no independent review of the evidence. But Commissioner Bracero says, wait a second. Look at the facts. Don't just look at the medical opinions, because there's no medical opinion in establishing causation. But look at the claimant's testimony. Even he said that his condition, none of his symptoms changed after this injury. They did not change. And, in fact, if you look at the chronology, and I think it's important, because sometimes with some of these cases the facts just speak to themselves and they're just irrefutable here. In December of 2006, he starts at the beginning experiencing neck and left upper extremity problems. He progresses through January 22, 2007. That's four days before the claimed injury. Physical therapy ends because they said it's showing no improvement. January 22, 2007, four days before this claimed injury. Dr. Mulligan says, you need a neurosurgical consultation. January 24, 2007, two days before this claimed injury. He sees Dr. King. He says, you've got radicular pain to your left arm. You need an MRI. January 26, 2007 is the date of the claimed injury. It's not reported by this individual's own admission. I did not report an injury. January 30, 2007, he sees Dr. Smith, the initial evaluation. The history is of neck pain into the left arm for nine weeks, not four days ago from the claimed injury, but for nine weeks, no history of injury. So four days after the claimed injury, he specifically, the claimant, says no history of injury. When he initially sees Dr. Rue, even the chronology given to Dr. Rue is incorrect. And in his deposition, and I said the testimony in my brief, Dr. Rue said, geez, you're right. He's inconsistent even in the history he gave to me. And then at the end of the deposition, Dr. Rue said, as the quote I gave to you before, now that I have all the information, I cannot say that this is traumatically increased. That is the final testimony from Dr. Rue. He rescinded his initial opinion because when he was given all the evidence, he says, no, I can't make this connection. Dr. Rue was straightforward. He just said, no, I can't. Now that I have all the statements, I don't see how this could be closely connected. That was not cured on redirected examination. Dr. Rue did not change his opinion to come back and say, oh, yeah, it is work-related because of X, Y, or Z. His last opinion is, it's not work-related. Dr. Merkin's opinion is, it's not work-related. You would not know that from reviewing Arbitrary Critique's decision because she, it was a scant analysis. She glossed over it. In my brief, I set forth some very compelling quotes. I know you all have read it. And I think it's clear that there's no medical dispute in this case. The only medical evidence is that it's not closely connected. There's really no lay evidence in this case that it worsened. The symptoms were the same. They never changed. And as a matter of fact, to go to that, if you believe there was an accident, I submit to you there's a very good argument that there was not an accident. But if you even believe there is an accident, by this individual's own testimony, he said, I didn't report it right away because I didn't think much of it. So four days before an injury he didn't think much of, he's recommended for surgery. Two days after this injury, which he didn't think much of, he sees a doctor and he doesn't, not only does he not give him a history of injury, he says, no history of injury and my problems date back to nine weeks ago. That's why Dr. Rue, on direct examination, the guy gave him the history he gave to me, I think it could be causally connected. Just like with Dr. Merck, both doctors said, wait a second, when you give me all this evidence, no, it can't be related. The horse was out of the barn. He had a neurosurgical consultation scheduled a couple of days before this injury. A couple of days after the injury he doesn't even mention the injury and he has the surgery for the condition that was present prior to the injury. I submit to you that this case is clear, that with an independent analysis, I'm not trying to retry the case, I'm just asking somebody to analyze the evidence on this case because there's no indication from the decisions, other than the dissent from Commissioner Brasurdo, that it's been done. So I'm asking this court to exercise the standard of review manifest rate of the evidence and correct what has been a flawed analysis below and a decision that was not based on the facts. When you read the actual evidence and you hear the actual facts, I don't know that there's any other decision that can be reached that matters not. And I'm asking that you reverse it for me. Counsel, please. Commissioner Brasurdo wrong in what he says about this decision? Yes, sir, I believe he is. When was he wrong? Well, I think he misanalyzed Dr. Rue's testimony. First, I'd like to introduce myself to the court. My name is David Galanti and I'm sitting petitioner of counsel, Mr. Greco. I think Commissioner Brasurdo was wrong in his analysis of Dr. Rue's testimony. If you look at Dr. Rue's testimony, the specific question that Mr. Olymp asked him was, was the condition present prior to the alleged accident date? The doctor answered honestly, yes, but go to the end of my direct examination of Dr. Rue. Dr. Rue said the main component, the main reason that he was operating on this individual was because of the pain complaint that the individual presented to him when he saw him for the first time on March 1, 2007. It specifically stated in there he was operating for the symptoms, not the condition. Both doctors of record, Dr. Merkin and Dr. Rue, testified that you can have an asymptomatic condition or a condition that's symptomatic and made worse by this specific kind of trauma that my client suffered. Counsel is making essentially four arguments as to why this case should be denied and why this court should find that the commission's decision is against the manifest way to the evidence. The first argument that he's making is that the timetable to Dr. Rue is off. In other words, that what my client told Dr. Rue was false. Look very specifically at the history that he wrote out in the history sheet that I introduced into evidence in Dr. Rue's deposition. He told Dr. Rue that his symptoms were present for four months. Was that exactly correct? No. His symptoms were present for about five months, but he had been under active medical care for four months. He also told Dr. Rue that he had a problem secondary to having a blow on the head and that that problem had been worse for approximately two weeks, which is, of course, off by about two weeks from the actual accident date. The commission nor the arbitrator found this argument to be of very much merit. Why? Because the important thing to consider is that my client did disclose to his treating physician that he had a prior ongoing medical complaint in his neck stiffness four months prior to the claimed date of injury or his treatment with Dr. Rue and that it was made more symptomatic approximately two weeks prior to the date that he first saw Dr. Rue. The second argument that counsel in his brief indicated that was the predominant reason that this court should overturn the commission's decision as being against the manifest way to the evidence is that Dr. Rue has not provided the relevant medical records on this matter until the deposition, specifically that he failed conservative care. This is largely irrelevant. My client gave an absolutely accurate history of not only the fact to Dr. Rue that he had a preexisting condition for four months of neck stiffness, but he also listed to him about the blow on the head, and furthermore he listed out to Dr. Rue specifically which doctors he had treated with. If you look in Dr. Rue's patient history questionnaire, he said he had treated previously with Dr. Smith, that he had previously treated with Dr. Mulligan, that he specifically had failed physical therapy, chiropractic manipulation, and injections. He wasn't trying to fool anybody. Two of his supervisors testified that he was an honest individual. Did Dr. Rue find this to be very relevant or necessary for his care and treatment? No. How do we know that? If you look at the history of the incident in Dr. Rue's medical record, nowhere in there is all of that recited, but it was all disclosed by my client, and Dr. Rue admitted that in his deposition. If Dr. Rue felt from a treatment perspective that he should have all of those medical records, certainly he's a physician, he could have obtained them. It was largely irrelevant to his care and treatment, and I think it's largely irrelevant to his opinion on causal connection, because of the fact that my client specifically told him he was having problems with his neck prior to this blow on the head. The third reason that counsel would suggest that this commission should overturn the commission's decision is that Dr. Rue operated on pre-existing degenerative changes. This commission has long held, I'm sorry, this court has long held that an aggravation of a pre-existing condition establishes causal connection in these injuries. My client is 50 years old now approximately. Of course he has some pre-existing degenerative disc disease. He never told Dr. Rue anything otherwise. He said he was having problems prior to the date in question. Finally, counsel makes a large point in telling this court that he misled Dr. Merkin somehow, and that Dr. Merkin wasn't given all the facts, and that's the reason that Dr. Merkin initially said that based upon the history that was given, he felt that this would be possibly causally related to this, and that he should undergo the procedure that he ultimately underwent with Dr. Rue. Look at my deposition exhibit in Dr. Merkin's deposition. It's the only exhibit that I introduced. It was the actual history that my client wrote down and handed to Dr. Merkin. He didn't deny anything. He left it blank. For instance, when asked by Dr. Merkin, the examining physician, how long his chief complaint had been present, he didn't say it just happened right from January 26th. He just left that blank. Unfortunately, he left a lot of the other areas blank on that form also. He didn't write anything down about prior treatment. He didn't write down anything about prior medical conditions or health histories. I think there's a difference, and I think the commission saw this, and the arbitrator saw this. There's a difference between my client not addressing those conditions in the report, the written report that he handed to Dr. Merkin, and flat out telling a lie or trying to deceive Dr. Merkin in some way. Finally, since my client's credibility is obviously in play here based upon counsel's representations, I would just like to remind the court that not one, but two of this individual's supervisors, people that are with management, said he's an honest employee. His pain complaints, the recorded pain complaints, changed after this incident. For those reasons, subject to your questions, I would ask this court to affirm the decision of the commission. Thank you very much. Mr. Perl? I'm going to go somewhat in a reverse chronological order here. The two management employees just testified as to the delay in reporting the accident, because it wasn't reported until several weeks later. They did not say, they did not testify that his symptoms worsened as a result of that accident. That testimony is not in the record. They just said that as far as they knew, he was an honest employee. Now, I don't tell witnesses about medical opinions and all that. They were just called to testify about the delay in injury, what the proper procedure would have been, which, incidentally, is to report the injury right away, which, by the way, he did not do. Dr. Merkin, the lack of history of Dr. Merkin, it's somewhat inconvenient that he just left it blank, but in Dr. Merkin's report and testimony, he specifically asked the guy about the pre-existing history and the claimant did not disclose it. That's a big difference. That's evidence of misleading, and this guy's credibility is at stake, both with regard to the accident and causation. Mr. Galanchy talks about the end of direct examination with Dr. Arruba, where he says it could be causally connected. That's not the point. He didn't even have the records until cross-examination. At the end of cross-examination, he said it's not traumatically induced, and that was not corrected on redirect examination. So the bottom line is the only medical opinion, both from Dr. Merkin and Dr. Arruba, is that this situation is not causally connected. Finally, the reason Dr. Arruba operated, and he testified about this in the quotes in my brief as well, it was a disc osteophyte complex. It was a fusion for a degenerative condition. There was no acute herniated disc. There was no acute pathology. If there had been, this would be a different case, but even Dr. Arruba said, I operated on this man because he had a symptomatic degenerative condition, and it was consistent with the degenerative process. There's no indication it was consistent with an injury. And finally, Mr. Galanchy seemed to indicate that his client was, maybe I misunderstood him, but an asymptomatic individual. Clearly he was not an asymptomatic individual. This guy was a symptomatic individual progressing to a need for neurosurgery, independent of this accident. I submit to you, that's why the surgery happened. It's independent of this accident. The dissenting opinion from Commissioner Brasurdo, I think, very precisely sets forth what the evidence actually does show. And I would redirect this quote again to that dissenting opinion, because I would submit to you, it's the only thorough analysis, and it's the only opinion that actually looks at the opinion testimony from Dr. Rue, their doctor, that says this surgery wasn't related to this claimed injury. It was from a degenerative condition that existed prior. Thank you very much. Thank you, counsel. The court will take the matter under advisory for disposition.